THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Gordon Gravelle
 o/a “CodePro Manufacturing,” Appellant,
 v.
 Kenneth
 Roberts, an individual, and Beacon Safe & Lock, Inc. and DOES I through
 V, and Roe Corporations VI through X, inclusive, Respondent.
 
 
 

Appeal From Horry County
Brooks P. Goldsmith, Circuit Court Judge

Unpublished Opinion No.  2008-UP-283
Submitted May 1, 2008  Filed June 2, 2008 

AFFIRMED

 
 
 
 Gordon Gravelle, of Ontario, Canada, for Appellant.
 Linda Weeks Gangi, of Conway, for Respondent.
 
 
 

PER
 CURIAM:  In this libel action, Gordon
 Gravelle (Gravelle) appeals the trial courts (1) verdict in favor of Kenneth
 Roberts (Roberts), (2) dismissal of his post-trial motions, (3) denial of a
 motion to represent himself, and (4) exclusion of evidence.  We affirm.
FACTS
Gravelle filed a lawsuit in Nevada for defamation
 against Jim Webb (Webb) and Jay Long (Long).  The suit stemmed from a buyers
 beware letter posted by Webb on ClearStar Security Network (ClearStar), a
 website for locksmiths, following Webbs purchase of a faulty machine manufactured
 by Gravelle.  Long is the creator of ClearStar.  The suit was dismissed and
 costs were assessed against Gravelle in the amount of $90,000.  Gravelle then
 filed a lawsuit in California against the same individuals.  Subsequently, Webb
 was dismissed from the California lawsuit, and Gravelle re-filed his lawsuit
 against Long in Nevada state court and federal court.  
Due to Gravelles lawsuits against Long, Roberts wrote
 a post on ClearStar asking fellow locksmith members of ClearStar to contribute
 money to help Long defend the suits.  Roberts post, captioned ClearStar under
 Fire (Again) . . . Terrorism of a Different Color, stated in full:

 When we
 can no longer speak openly and freely on Forums such as Clearstar we certainly
 have been terrorized.  I think most of us who use Clearstar, for the intent
 that [Long] created it, will agree that it has become one of the most useful
 tools that we have.  My hope is that it will continue to mature as one of the
 best technical resources we have as Locksmiths.
 So I ask
 all who pay the 40 bucks a year . . . the 250 or 500 for lifetimeto consider
 how much money Clearstar has made and/or saved you this year.  Think about it.
 Lets
 [sic] say you have worked hard this year . . . very hard . . . trying to grow
 and improve your business.  Then you get hit with a lawsuit (one which you
 dont deserve to be part of) costly, distracting and depressing.  Your friends
 [sic] rally for you and the court with its wisdom throws the suit out . . . you
 relax.
 Now in a
 different venue . . . the State of California, the Lawsuit is new again . . . .
 Terrorism
 of a different Color . . . frivolous lawsuits.
 The
 Clearstar Defense Fund is open for business.

[Roberts]
Based
 on this post, Gravelle filed a complaint in South Carolina against Roberts[1] for libel.[2] 
 He filed this complaint in South Carolina because Roberts is an officer and
 employee of Beacon Safe & Lock, Inc., which is a South Carolina corporation. 
 Gravelle claimed Roberts post accused him of filing frivolous lawsuits and
 carrying out deplorable actions akin to that of Osama Bin Ladin, [imputing
 toward him and his company] a lack of integrity, honesty, trust,
 professionalism . . . which held him up to ridicule, scorn mocking, etc . . .
 and lower[ing] him within his professional community.  
At
 the close of Gravelles case, Roberts moved for a directed verdict and Gravelle
 moved to represent himself pro se, though he wanted to retain his
 current counsel as second chair.  The trial court denied Gravelles motion for hybrid
 representation and granted Roberts motion for a directed verdict, finding the
 publication was not defamatory as a matter of law, and alternatively, even if
 it was defamatory, it was not actionable per se.  Gravelle then
 filed a motion for a new trial, which was dismissed as untimely.  This appeal
 follows.
LAW/ANALYSIS
I. Directed Verdict
Gravelle
 maintains the trial court erred by granting Roberts directed verdict motion.  We
 disagree.
In
 ruling on a motion for directed verdict, the trial court is required to view
 the evidence and inferences reasonably drawn therefrom in the light most
 favorable to the party opposing the motion and deny the motion when either the
 evidence yields more than one inference or its inference is in doubt.  Law
 v. S.C. Dept of Corr., 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006).  The
 appellate court will reverse the trial courts ruling on a directed verdict
 motion only when there is no evidence to support the ruling or when the ruling
 is controlled by an error of law.  Id. at 434-35, 629 S.E.2d at 648.  When
 considering a directed verdict motion, neither the trial court nor the appellate
 court has authority to determine issues of credibility or to resolve conflicts
 in the testimony or evidence.  Erickson v. Jones St. Publishers, L.L.C.,
 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006).
[L]ibel
 is a written defamation or one accomplished by actions or conduct.  Holtzscheiter
 v. Thompson Newspapers, Inc., 332 S.C. 502, 508, 506 S.E.2d 497, 501
 (1998).  The tort of defamation allows a plaintiff to recover for injury to
 his or her reputation as the result of the defendants communications to others
 of a false message about the plaintiff.  Parrish v. Allison, 376 S.C.
 308, 320, 656 S.E.2d 382, 388 (Ct. App. 2007).  To recover for defamation, the
 plaintiff must establish: (1) a false and defamatory statement concerning
 another; (2) an unprivileged publication to a third party; (3) fault on the
 part of the publisher; and (4) either actionability of the statement
 irrespective of special harm or the existence of special harm caused by the
 publication.  Lynch v. Toys R Us-Del., Inc., 375 S.C. 604, 619, 654
 S.E.2d 541, 549 (Ct. App. 2007).  Pursuant to the first element, the trial
 court must initially determine if the statement is reasonably capable of
 conveying a defamatory meaning.  Parrish, 376 S.C. at 321, 656 S.E.2d at
 389.  
A
 statement can be defamatory per se or defamatory per quod.  Id.  Defamation per se occurs when the defamatory
 meaning of a statement is obvious on the face of the statement, whereas
 defamation per quod occurs when extrinsic evidence must be
 introduced in order to prove the defamatory meaning.  Holtzscheiter, 332
 S.C. at 508-09, 506 S.E.2d at 501.  
Roberts
 post is not defamatory on its face and, therefore, is not defamatory per se.  See Whitaker v. Sherbrook Distrib. Co., 189 S.C. 243,
 245, 200 S.E. 848, 849 (1939) (stating for words to be libelous per se,
 the court must be able to presume without extrinsic evidence the plaintiff has
 been degraded or suffered some loss due to these words).  Roberts post complains
 about frivolous lawsuits but does not name Gravelle as the instigator of the
 suits.  While we recognize Gravelles name need not be referenced in the
 writing to support a libel action, we find the description in the writing too
 vague and any damage too nebulous to amount to defamation.  Cf. Nash
 v. Sharper, 229 S.C. 451, 456, 93 S.E.2d 457, 459 (1956) (To support an
 action for a libel, the plaintiffs name need not be mentioned in the writing;
 it is sufficient that there is a description of, or reference to, him, by which
 he may be known.).
Further,
 Gravelle failed to present any evidence indicating the statement was defamatory per quod.  See Fleming v. Rose, 338 S.C. 524, 532-33,
 526 S.E.2d 732, 737 (Ct. App. 2000), overruled on other grounds by Fleming
 v. Rose, 350 S.C. 488, 567 S.E.2d 857 (2002) (If the defamatory meaning is
 not clear unless the hearer knows facts or circumstances not contained in the
 statement itself, then the statement is defamatory per quod.).  Indeed,
 Gravelle was unable to show that even if additional information was known to
 the reader that the statement was false or that it resulted in harm to his
 reputation.
Moreover,
 even if Roberts statement was defamatory, no evidence was presented showing
 the defamation was actionable.  See Capps v. Watts, 271 S.C. 276,
 281, 246 S.E.2d 606, 609 (1978) (If a publication is not both libelous and
 actionable, a cause of action for libel cannot lie.).  Specifically, Gravelle failed
 to plead and prove common law actual malice and special damages, and the
 statement is not the type from which the law presumes malice.  See Holtzscheiter,
 332 S.C. at 510, 506 S.E.2d at 501-02 (stating the law presumes malice and
 general damages with defamation that is actionable per se, but
 plaintiff must plead and prove malice and special damages if it is not
 actionable per se).  Accordingly, the trial court did not err by
 directing a verdict in favor of Roberts.
II. New Trial Motion
Gravelle
 contends the trial court erred by dismissing his motion for a new trial as
 untimely.  We disagree.
Motions
 for new trials are governed by Rule 59 of the South Carolina Rules of Civil
 Procedure.  Boone v. Goodwin, 314 S.C. 374, 376, 444 S.E.2d 524, 525
 (1994).  Rule 59(b), SCRCP, provides:  The motion for a new trial shall be
 made promptly after the jury is discharged, or in the discretion of the court
 not later than 10 days thereafter.  
The
 trial court granted Roberts motion for a directed verdict and discharged the
 jury on May 24, 2005.  Gravelle did not serve his motion for a new trial until
 June 9, 2005.  Because the motion was not made within the ten days required by
 Rule 59(b), SCRCP, the trial court dismissed the motion as untimely.  Gravelle
 does not dispute his motion was served after ten days had elapsed from the time
 the jury was discharged.  Accordingly, the trial court did not abuse its
 discretion by electing not to entertain Gravelles motion.
III. Hybrid Representation
Gravelle
 argues the trial court erred in denying his motion for hybrid representation. 
 We find this argument to be abandoned on appeal.
An
 issue is deemed abandoned and will not be considered on appeal if the argument
 is raised in a brief but not supported by authority.  Historic Charleston Holdings, LLC v. Mallon, 365 S.C. 524, 533 n.7, 617 S.E.2d 388, 393 n.7 (Ct.
 App. 2005).  Gravelle has failed to cite any authority in support of his
 assertion that the trial court erred in denying his motion for hybrid
 representation, and he has, therefore, abandoned this issue on appeal.  
IV. Evidence
Gravelle
 maintains the trial court erred by excluding evidence supporting his special
 damages claim and evidence offered to show the effects of Roberts alleged
 libel.  We disagree.
The
 admission or exclusion of evidence is within the sound discretion of the trial
 court and will not be disturbed on appeal absent an abuse of discretion.  Todd
 v. Joyner, 376 S.C. 114, 118-19, 654 S.E.2d 862, 864 (Ct. App. 2007).  An
 abuse of discretion occurs when the ruling is based on an error of law or a
 factual conclusion without evidentiary support.  Conner v. City of Forest Acres, 363 S.C. 460, 467, 611 S.E.2d 905, 908 (2005).

 a. Special Damages

The trial court excluded Gravelles special damages
 exhibit because his damages were speculative and not compensable under South Carolina law.  South Carolina does not permit recovery for speculative damages.  Llewellyn
 v. Atl. Greyhound Corp., 204 S.C. 156, 170, 28 S.E.2d 673, 678 (1944).  Gravelle
 argued his special damages amounted to $110,490, which included: (1) deposition
 and trial expenses of airline tickets, hotel accommodations, car rentals, and
 out-of-pocket expenses such as food and gas, (2) loss of business (coinciding
 with deposition and trial dates), (3) prospective advertisement expenditures,
 and (4) expenses associated with attending trade shows.  As the trial court
 noted, the damages Gravelle sought were primarily related to the case.  The
 only damages not related to his lawsuit were future advertising expenses.  The
 evidence supports the trial courts conclusion that these damages were
 speculative or not the type of damages compensable under South Carolina law.

 b. Effects of Libel Evidence

The
 trial court excluded the evidence depicting responses by other individuals to Roberts
 post, finding the evidence was hearsay.  Gravelle argues these responses are
 essential to establish the damage his reputation sustained as a direct and
 proximate result of Roberts statements.  The responses offered, however, were written
 by third parties, not Roberts.  These responses were hearsay because they were
 written by third parties not testifying at trial or otherwise under oath and
 offered to prove Gravelles reputation was damaged, and no exception applied to
 render this hearsay admissible.  See  Rule 801(c), SCRE (Hearsay is a
 statement, other than one made by the declarant while testifying at the trial
 or hearing, offered in evidence to prove the truth of the matter asserted.);
 Rule 802, SCRE (stating hearsay is not admissible unless an exception applies). 
 Accordingly, the trial court did not err in refusing to admit the responses.
CONCLUSION
Accordingly,
 the decision of the trial court is
AFFIRMED.[3] 
WILLIAMS,
 THOMAS, and PIEPER, JJ., concur. 

[1] The action was
 filed against Roberts as an individual and as the
 principle officer of Beacon Safe & Lock, Inc. and DOES I through V, and Roe
 Corporations VI through X.  
[2] Gravelle also
 sued for tortious interference with prospective or existing business relations,
 but he abandoned the claim at trial.  
[3] We decide this
 case without oral argument pursuant to Rule 215, SCACR.