THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Case no.
 2001-CP-40-3330/Newsmall Clemson, LLC, Appellant,
 
 
 

v.

 
 
 
 Earth
 Management Systems, Inc., Respondent,
 Case no.
 2002-CP-40-2778/John H. Newsome, Jr., Appellant,
 
 
 

v.

 
 
 
 Earth
 Management Systems, Inc., 
 
 
 

Appeal From Richland County
 Reginald I. Lloyd, Circuit Court Judge

Unpublished Opinion No. 2008-UP-430
 Heard December 12, 2007  Filed July 31,
2008    

AFFIRMED IN PART, REVERSED AND REMANDED IN
PART

 
 
 
 T. Alexander Beard, of Mount Pleasant, for Appellants.
 Charles E. Hill, James L. Werner, and Michael E. Kozlarek, all of Columbia, for Respondent.
 
 
 

PER CURIAM:  Newsmall
 Clemson, LLC, and its sole member, John H. Newsome, Jr., (collectively
 Newsmall) appeal the trial courts granting  of directed verdict to Earth
 Management Systems, Inc. (Earth Management), on its causes of action for
 negligence, negligent misrepresentation, and violation of the South Carolina
 Unfair Trade Practices Act (UTPA).  We affirm in part and reverse in part.  
FACTS
Newsmall was interested in purchasing
 forty-three acres of undeveloped commercial property (the Property) in Columbia, South Carolina at the Clemson Road exit of Interstate 20 for commercial
 development.  Charles Small and his company, Diversified Development, represented
 Newsmall and were responsible for developing Newsmalls projects.  Small was
 Newsomes business partner in several ventures, and he and his company were
 experienced in real estate development.  
Small hired Earth Management, on behalf of Newsmall, to perform a
 Phase I Environmental Site Assessment (Phase I Assessment) of the Property.  The
 American Society for Testing and Materials (ASTM) standard for Phase I
 Assessment Process provides the purpose of a Phase I Assessment is to define
 good commercial and customary practice for conducting an environmental site
 assessment of commercial real estate.  The intent is to enable a user to
 qualify for the innocent landowner defense to Comprehensive Environmental
 Response, Compensation, and Liability Act (CERCLA)[1] liability.  The ASTM standard provides
 the goal of the Phase I Assessment is to identify recognized environmental
 conditions.  It defines recognized environmental conditions as the
 presence or likely presence of any hazardous substances or petroleum products
 on a property under conditions that indicate an existing release, a past
 release, or a material threat of a release of any hazardous substances or
 petroleum products into structures on the property or into the ground,
 groundwater, or surface water of the property.  (emphasis omitted).  The
 standard defines hazardous substance as a substance defined as a hazardous
 substance pursuant to CERCLA.  
The ASTM standard describes the components
 included in a Phase I Assessment as:  (1) records review; (2) site
 reconnaissance; (3) interviews with current owners and occupants and government
 officials; and (4) report.  The
 list of standard environmental sources includes state landfill and/or solid
 waste disposal site lists.  The standard provides:

 One or more additional state sources or local sources of
 environmental records may be checked, in the discretion of the environmental
 professional, to enhance and supplement federal and state sources . . . .
 Factors to consider in determining which local or additional state records, if
 any, should be checked include (1) whether they are reasonably ascertainable,
 (2) whether they are sufficiently useful, accurate, and complete in light of
 the objective of the records review . . . , and (3) whether they are generally
 obtained, pursuant to local good commercial or customary practice, in initial
 environmental site assessments in the type of commercial real estate
 transaction involved. 

Further, the
 standard provides a list of local sources that may be useful including Department
 of Heath/Environmental Division.  
The ASTM standard also provides [a]ll
 obvious uses of the property shall be identified from the present, back to the
 propertys obvious first developed use, or back to 1940, whichever is earlier.  Additionally, it provides a list of standard historical sources.  Those
 sources include aerial photographs, property tax files, and recorded land title
 records.  However, the standard cautions if recorded land title records are
 used, they cannot be the sole historic source consulted.  
On January 28, 1999, Earth Management issued a report following
 its investigation.  The report contained an executive summary, which
 provided: [e]vidence of debris dumping was observed, but nothing of a
 hazardous nature was identified, no extensive dumping was observed, and no
 evidence of debris burial in old borrow pits was identified.  The executive
 summary further stated: 

 During the 1980s, the eastern half . . . contained several borrow
 areas from which sand was excavated by a local contractor.  This practice ceased
 in the mid 1980s, with the excavations backfilled with on-site sand.  There is
 no evidence to suggest that foreign materials were introduced into the borrow
 pits and buried.

The executive
 summary concluded:  No further investigation for environmental considerations is
 recommended at this time.  
Newsmall purchased the Property on April
 29, 1999.  In the process of constructing a road, contractors unearthed a
 landfill.  Newsmall found an agreement between Loveless & Loveless
 and Interstate Investment Associates, a former owner of the Property, that
 provided for the mining of sand and also for the implementation and management
 of a refuse dump on the property.  The agreement was recorded in the Richland
 County Deeds Book.  Additionally, the South Carolina Department of Health and
 Environmental Control (DHEC) had a file detailing the history of the mining and
 landfill operations and identified the Property as a former asphalt plant.  
Newsmall excavated part of the landfill to build the road.  The debris
 could not be reburied because it contained several types of debris such as
 metal, tires, plastic bags, household trash, and construction debris, and DHEC
 regulations required the different types of debris be separated before
 disposal.  Shortly thereafter, Newsmall hired Geo-Systems to
 determine the amount and location of the former landfill.  Geo-Systems
 discovered construction debris, household garbage, paint cans, oil cans,
 batteries, tires, and medical waste.  Newsmall paid for the cleanup
 where the road was placed, but did not remove the remaining debris.  
Newsmall commenced an action against Earth
 Management, asserting in amended complaints[2] negligence, negligent misrepresentation, and violation of the South Carolina
 Unfair Trade Practices Act (UTPA), Sections 39-5-10 to -560 of the South
 Carolina Code (1985 & Supp. 2007).  At the close of Newsmalls case, Earth
 Management moved for a directed verdict on all of Newsmalls causes of action,
 and the trial court granted the motion.  Newsmall filed a Rule 59,
 SCRCP, motion, which the trial court denied.  This appeal followed. 
STANDARD
 OF REVIEW
When ruling on a directed verdict motion, the trial court is required
 to view the evidence and the inferences that reasonably can be drawn therefrom
 in the light most favorable to the nonmoving party.  Sabb v. S.C. State Univ., 350 S.C. 416, 427, 567 S.E.2d 231, 236 (2002).  If more than one
 reasonable inference can be drawn or if the inferences to be drawn from the
 evidence are in doubt, the case should be submitted to the jury.  Chaney v. Burgess, 246 S.C. 261, 266, 143 S.E.2d 521, 523 (1965).  When considering directed verdict motions,
 neither the trial court nor the appellate court has authority to decide
 credibility issues or to resolve conflicts in the testimony or evidence.  Erickson
 v. Jones St. Publishers, L.L.C., 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006).
LAW/ANALYSIS
I.  Timeliness
Earth Management
 asserts Newsmall did not file its appeal in a timely manner.  Specifically,
 Earth Management argues because Newsmall did not make a motion for a new trial
 at the conclusion of the case and instead, without the permission of the trial
 court, filed the motion within ten days, the motion was not properly before the
 trial court. Therefore, Earth Management maintains Newsmall had thirty days
 from the conclusion of the case instead of thirty days from the trial courts
 ruling on the motion in which to file its appeal.  We disagree.
[A] party must
 make a motion for a new trial promptly after the jury is discharged or request
 ten days within which to make the motion.  Boone v. Goodwin, 314 S.C.
 374, 376, 444 S.E.2d 524, 525 (1994).  Although the trial court has discretion
 to sua sponte grant a new trial within ten days following the close of a
 case, that power cannot remedy a partys filing a motion for a new trial
 without the courts permission at the close of the case.  See id. 
Although Newsmalls motion was titled motion for a
 new trial, the subject of the motion was both a request for a new trial and
 for the trial court to reconsider its decisions.  The motion cites to
 Rule 59, SCRCP, but does not specify whether it is referring to sections 59(a)
 through 59(d), which refer to motions for a new trial, or section 59(e), which
 refers to a motion to alter or amend the judgment.  The supreme court held it
 was proper to treat a plaintiffs written motion as a Rule 59(e) motion even
 though it was erroneously captioned as a motion for new trial.  Fields v.
 Reg. Med. Ctr. Orangeburg, 363 S.C. 19, 27, 609 S.E.2d 506, 510 (2005). 
 The courts must treat a motion based on its substance and effect as opposed to
 how it was captioned by a party.  Id.  Accordingly, we view the motion
 as both one for a new trial and one to alter or amend the judgment.  
Unlike
 a motion for a new trial, a motion to alter or amend does not require the
 courts permission to file the motion.  However, both motions stay the time to
 file an appeal, and the thirty day time period does not begin to run until the
 appellant receives the trial courts ruling on the motion.  Rule 59(f), SCRCP. 
 Because Newsmalls motion was at least in part a motion to alter or amend, the
 motion stayed the time for filing an appeal.  Newsmall filed its motion within
 thirty days of the trial courts ruling on the motion, and thus, the appeal was
 timely.  Accordingly, Newsmalls appeal is properly before this court.
II. Directed Verdict on Negligence
 Claim
Newsmall contends the trial court erred in granting
 Earth Management a directed verdict on its negligence claim.  Specifically,
 Newsmall maintains the evidence presented at trial showed Earth Management
 breached its duty to Newsmall.  Further, Newsmall argues the evidence presented
 showed Newsmall suffered damages as a result of the breach of duty.  We agree.
To
 establish a negligence cause of action, the plaintiff
 must prove:  (1) a duty of care owed by defendant to plaintiff; (2) breach of
 that duty by a negligent act or omission; and (3) damage proximately resulting
 from the breach of duty.  J.T. Baggerly v. CSX Transp., Inc., 370 S.C. 362, 368-69, 635 S.E.2d 97, 101 (2006).  Proximate cause requires proof of: (1) causation-in-fact, and (2)
 legal cause.  Id. at 369, 635 S.E.2d at
 101.
       A. 
 Breach of Duty
Mark Sellers, an environmental consultant testifying on behalf of
 Newsmall, stated he believed the report did not meet the standard of care for
 the requirements of a Phase I Assessment.  He further testified:

 There
 are a number of deviations from the standards which either may or may not have
 been part of the scope of work.  The biggest problem I have is that the report
 presents information that there has been at least surface landfilling and that
 there were pits that had been filled and that aerial photographs are referenced
 for those activities, yet it draws the conclusion that no additional work needs
 to be done, and I dont think the evidence in the report would indicate that no
 additional work needs to be done.  

Additionally,
 Robert White, an expert in ASTM standards, testified he did not believe Earth
 Management had met its standard of care in performing the Phase I Assessment.  He testified Earth Management failed to identify recognized environmental
 conditions on the property, that being the landfill.  I believe they failed to
 readily review available records with DHEC.  Moreover, White testified, I
 dont know that they even did a search of recorded land titles.  And then . . .
 they obviously didnt identify the existence of the landfill on the property. 
 He also testified based on Earth Managements findings, it should have
 recommended a Phase II Assessment of the Property.  Finally, he
 testified in his opinion, the landfill was a recognized environmental condition.  
When considering the directed verdict motion, the trial court
 asked where is anything on this site right now under expert testimony or lay
 testimony here today or during this week that says theres a likelihood of
 anything hazardous out there other than Mr. White?  Newsmall replied, Your
 honor, then thats for them to argue, his credibility, and   The trial court
 responded, Thats for right now, because Ill deal with Mr. White in a minute,
 but other than Mr. White identify some testimony.  Later, the trial court
 stated nobody even came in here today with the exception of Mr. White, I will
 give you that Mr. Beard [Newsmalls counsel] and said that anything falls in
 the purview of CERCLA, which is what the Phase I was intended to look at to
 begin with.  The trial court did not mention White again.  
The
 testimony of Sellers and White supports Newsmalls claim that Earth Management
 breached its duty.  The trial court even acknowledged Whites testimony
 indicated the duty was breached.  In deciding the directed verdict motion, the
 trial court improperly weighed the evidence.  However, the trial courts duty
 is not to weigh the evidence or determine matters of credibility.  Rather, those
 matters are left to the jury.  See Erickson v. Jones St. Publishers, L.L.C., 368 S.C. 444, 463, 629 S.E.2d
 653, 663 (2006) (holding the trial court does not have authority to decide
 credibility issues or to resolve conflicts in the testimony or evidence when
 considering a directed verdict motion).  Therefore, some evidence presented at
 trial suggested Earth Management breached its duty to Newsmall. 
              B. 
 Damages
Because
 we determine Earth Management breached its duty, we now turn to whether
 Newsmall provided any evidence of damages.
Small testified he
 did not believe Newsmall could sell the Property that had not been cleaned up
 because no buyer would know what they were buying.  Small further testified the
 real estate community advised Newsmall not to even attempt to sell the Property
 where the landfill was located.  The engineer who worked for the construction
 company that discovered the debris, Ben Whetstone, estimated the total cleanup
 costs to be $1,636,575.  Sellers testified he found that estimate to be
 reasonable.  
In addition, Newsmall had sold two lots on the Property before discovering
 the landfill.  After discovering the landfill and learning those two
 lots included the former landfill, Newsmall had to purchase additional property
 to offer as an exchange to the purchasers.  One party received 2 acres
 instead of the original 1.37 acres.  The other party received 3.6 acres with a
 slope easement as well as frontage on Percival Road, instead of the original
 3.5 acre tract with no frontage.  Additionally, Newsmall
 discounted the price by $100,000 for another parcel that contained debris.  
Newsmall
 presented evidence of the cost of clearing the debris, the impact on the
 ability to sell the property, and the expenses they incurred having to appease
 purchasers of lots contaminated by the landfill.  A jury could reasonably find
 Newsmall would not have suffered these damages if Earth Management had
 discovered the problems with the Property and Newsmall had purchased other
 property instead.  
Accordingly,
 because the record contained evidence Earth Management breached its duty and
 Newsmall, as a result, suffered some damages, the trial court erred in granting
 Earth Managements motion for a directed verdict on the issue of negligence.
III. Directed Verdict on
 Negligent Misrepresentation
Newsmall
 asserts the trial court erred in granting Earth Managements motion for a
 directed verdict on negligent misrepresentation.  We agree.
To establish a claim for negligent misrepresentation, Newsmall
 must be able to prove the following elements:  (1) the defendant made a false representation to the
 plaintiff; (2) the defendant had a pecuniary interest in making the statement;
 (3) the defendant owed a duty of care to see that he communicated truthful
 information to the plaintiff; (4) the defendant breached that duty by failing
 to exercise due care; (5) the plaintiff justifiably relied on the representation;
 and (6) the plaintiff suffered a pecuniary loss as the proximate result of his
 reliance upon the representation.  AMA Mgmt. Corp. v. Strasburger, 309
 S.C. 213, 222, 420 S.E.2d 868, 874 (Ct. App. 1992).  A duty to exercise
 reasonable care in giving information exists when the defendant has a pecuniary
 interest in the transaction.  Redwend Ltd. Pship v. Edwards, 354 S.C.
 459, 474, 581 S.E.2d 496, 504 (Ct. App. 2003).  It is not necessary for
 Newsmall to prove Earth Management knowingly made a false representation. 
 Unlike fraud, which requires the conveyance of a known falsity, negligent
 misrepresentation is predicated upon transmission of a negligently made false
 statement.  Brown v. Stewart, 348 S.C. 33, 43, 557 S.E.2d 676, 681 (Ct. App.
 2001).  
Earth Management
 asserts the purported misrepresentation relied on by Newsmall, that no further
 investigation for environmental considerations is recommended at this time was
 not a representation of a then existing fact but rather was an opinion.  This
 court held in a fraud action that the false representation must be one of fact
 rather than the mere expression of an opinion.  Winburn v. Ins. Co. of N.
 America, 287 S.C. 435, 440, 339 S.E.2d 142, 145 (Ct. App. 1985) (holding
 statement that a person was a good mechanic did not support a claim for
 fraud).  However, we find that even if the recommendation was merely an
 opinion, the Phase I Assessment does contain factual representations that could
 support a claim for negligent misrepresentation.  
In the
 Phase I Assessment, Earth Management stated [N]o evidence of debris burial in
 old borrow pits was identified.  There is evidence in the record to support
 Newsmalls contention that Earth Management was negligent in failing to review
 the historical sources that indicated the Property had been used as a garbage
 dump.  Thus, the jury could find Earth Management negligently misrepresented
 there was no evidence of debris burial on the Property.  
In
 addition, Earth Management stated that former owner Thomas McTeer had been
 interviewed and related that no foreign material was ever placed in the pits
 and buried.  However, McTeer testified that when Earth Managements Senior
 Hydrogeologist, Brad Hubbard, interviewed him, he told Hubbard that he did not
 know what was in the borrow pits, that Loveless and Loveless had the lease
 agreement on it and he could contact them.  It is for the jury to decide
 whether Earth Management made a misrepresentation regarding the interview with
 McTeer.  
Furthermore,
 Earth Management stated the Property was only zoned C-3, general commercial
 while in fact portions of the Property were zoned M-1, light industrial.  Thus,
 the record contains evidence of alleged factual misrepresentations that could
 support Newsmalls claim.  
Earth
 Management argues Newsmall did not reasonably rely on any of the purported
 misrepresentations.  Whether reliance is justified in a given situation
 requires an evaluation of the circumstances involved, including the positions
 and relations of the parties.  Redwend, 354 S.C. at 474, 581 S.E.2d at
 504.  First, Earth Management asserts no one with Newsmall read the detailed
 Phase I Assessement.  However, Newsmalls developer, Small, testified that he
 looked through the entire assessment.  When asked if he studied it, he stated,
 Could I pass an exam on it?  I dont think so.  But I probably could tell you
 what was in it, yes.  In a deposition, Small admitted that he did not recall
 the disclosures of debris dumping in the assessment.  In addition, on cross-examination,
 he admitted he had not read every word of the assessment.  Although there is a
 conflict in Smalls testimony, it is for the jury to decide whether he read the
 report and justifiably relied on the representations made in it.  
Earth Management
 also asserts the disclosures it made in the Phase I Assessment should have
 alerted Newsmall to the possibility of the existence of debris.  The report
 does note the existence of scattered debris on the Property shown on a 1981 aerial
 photograph raised a potential concern that the possible use of the site as a
 borrow pit may have resulted in debris burial . . . .  However, the report
 maintains in several places that no evidence of debris burial in old borrow
 pits was identified.  
The
 ASTM Standards call for the environmental profession to review historical
 sources such as land title records and state landfill and/or solid waste
 disposal site lists and to interview local government officials.  The list of local sources that may be
 useful includes Department of Health/Environmental Division.  Although Newsmall may have discovered the landfill
 if it had made its own records search, a jury may reasonably find Newsmall had
 a right to rely on the professional it hired to make such a review.  The
 issue of whether Newsmall reasonably relied upon the representations Earth
 Management made in the report is one for the jury to decide.  See Unlimited
 Servs., Inc. v. Macklen Enters., Inc., 303 S.C. 384, 387, 401 S.E.2d 153,
 155 (1991) (The general rule is that questions concerning reliance and its
 reasonableness are factual questions for the jury.).
Taking
 the evidence in the light most favorable to Newsmall, we find Newsmall
 presented sufficient evidence to allow the court to submit the issue of
 negligent misrepresentation to the jury.  Accordingly, we find the trial
 court erred in granting Earth Management directed a verdict on the claim for
 negligent misrepresentation.  
IV. Directed Verdict on UTPA
Newsmall
 contends the trial court erred in granting Earth Managements motion for a
 directed verdict on violation of the UTPA.  We disagree.
The
 UTPA creates a private right of action in favor of [a]ny person who suffers
 any ascertainable loss of money or property, real or personal, as a result of
 the use or employment by another person of an unfair or deceptive method, act
 or practice declared unlawful by § 39-5-20 . . . .  S.C. Code Ann. § 39-5-140(a)
 (1985).  In order to recover pursuant to the UTPA a plaintiff must demonstrate:
  (1) a violation of the Act by the commission of an unfair or deceptive act in
 trade or commerce; (2) proximate cause; and (3) damages.  Schnellmann v. Roettger, 368 S.C. 17, 23, 627 S.E.2d 742, 745-46 (Ct. App. 2006) affd
 as modified, 373 S.C. 379, 645 S.E.2d 239 (2007).  An act is unfair when it is offensive to public policy or when
 it is immoral, unethical, or oppressive.  Bessinger v. BI-LO, Inc., 366 S.C. 426, 432, 622 S.E.2d 564, 567 (Ct. App. 2005). 
A
 plaintiff bringing a private cause of action under the UTPA is required to
 allege and prove the defendants actions adversely affected the public
 interest.  Daisy
 Outdoor Adver. Co. v. Abbott, 322 S.C. 489, 493, 473 S.E.2d 47, 49 (1996).  [U]nfair or deceptive acts or practices in the conduct of trade
 or commerce have an impact upon the public interest if the
 acts or practices have the potential for repetition.  Noack Enters., Inc. v. Country Corner Interiors of
 Hilton Head Island, Inc., 290 S.C. 475, 480, 351 S.E.2d 347, 350-51 (Ct. App.
 1986).  Plaintiffs in prior cases often
 have shown potential for repetition in two ways:  (1) by showing the same kind
 of actions occurred in the past, thus making it likely the actions will
 continue to occur absent deterrence; or (2) by showing the companys procedures
 create a potential for repetition of the unfair and deceptive acts.  Daisy, 322 S.C. at 496, 473 S.E.2d
 at 51.  
Newsmall
 asserts Earth Management violated the UTPA by (1) failing to provide Newsmall
 with a proposal as required under the ASTM Standards or (2) failing to explain
 or otherwise inform Newsmall of (i) any restrictions or narrow scope
 limitations based on technical engineering standards incorporated only by
 reference in the final Phase I Report and (ii) that the alleged limitation on
 the Report varied from customs and practices in the industry or Newsmalls
 reasonable expectations.       
We
 agree with the trial court that Newsmall has failed to show a violation of the
 UTPA.  Newsmall failed to provide evidence that the same kind of actions
 occurred in the past.  Newsmall asserts the trial court is to blame for this
 failure as it attempted to introduce into evidence an unrelated proposal by
 Earth Management, but the trial court refused to admit the proposal.  Although
 Newsmall argues the trial court erred in this decision, it provides no
 reasoning or law to support this argument.  Accordingly, we find the issue of
 the admissibility of the proposal is not properly before this court.  Mulherin-Howell
 v. Cobb, 362 S.C. 588, 600, 608 S.E.2d 587, 593-94 (Ct. App. 2005) (noting
 when an appellant fails to cite any supporting authority for his position and
 makes conclusory arguments, the appellant abandons the issue on appeal).  The
 proposal was the only evidence Newsmall cites to show actual repetition.   
In
 addition, Newsmall failed to provide evidence that Earth Managements
 procedures create a potential for repetition of the unfair and deceptive acts. 
 Newsmalls claim for a UTPA violation is based on an alleged dispute between it
 and Earth Management as to the scope of the Phase I Assessment.  The
 Limitations section of the Phase I Assessment clearly provides the report was
 performed in accordance to performance standards outlined in ASTM Standard
 1527(97).  Newsmall claims it did not know the standard and argues the scope
 was intended to be broader for this project.  However, it provided no evidence
 other clients of Earth Managment would have a similar dispute over the scope of
 the project.  Newsmall relies on a statement Earth Managements expert witness,
 Thomas Donn, made in his deposition, although the trial court denied Newsmalls
 attempt to introduce excerpts of the deposition into evidence.  In the
 deposition, Donn testified that the tank, soft sand, the depression, the borrow
 pits, and the partially buried construction debris were not recognized
 environmental conditions.  However, when asked if they were environmental
 concerns, he answered, Yeah, I would say to some degree, and thats why I
 would show those and indicate those in the report.  There wouldnt be any reason
 to include the report if it didnt have any environmental significance. These
 environmental concerns were in fact noted in the Phase I Assessment.  Even if
 we considered Donns deposition, we fail to see how it supports Newsmalls
 claim for a UTPA violation.  
We
 find no evidence in the record that this was any more than a dispute of the
 scope of the Assessment limited only to the parties involved.  See Jefferies v. Phillips, 316 S.C. 523, 527, 451 S.E.2d 21, 23 (Ct. App. 1994) (stating
 conduct that only affects the parties to the transaction provides no basis for
 a UTPA claim).  Accordingly, the
 trial court did not err in granting Earth Managements motion for a directed
 verdict on the UTPA violation.  
 V.  Deposition
Newsmall maintains
 the trial court erred in finding it did not have discretion to consider
 allowing an excerpt from Thomas Donns deposition because Newsmall failed to
 provide timely notice.  We find no prejudice in this ruling.  See Lucas
 v. Sara Lee Corp., 307 S.C. 495, 498, 415 S.E.2d 837, 839 (Ct. App. 1992)
 (stating appellant must show error and prejudice in the exclusion of
 evidence).  As stated above, even when considering the excerpts from Donns
 deposition, we find the trial court correctly granted a directed verdict on Newsmalls
 UTPA claim.  In addition, Newsmall will be able to provide timely notice if it
 wishes to offer the excerpts at the retrial of the negligence and negligent
 misrepresentation claims.  
VI. Affirmative Defenses
Newsmall argues the trial court erred in considering
 Earth Managments affirmative defenses when ruling on the directed verdicts.  Earth
 Management conceded this issue at oral argument.  Accordingly, to the extent
 the trial court ruled on the affirmative defenses, this ruling is reversed.  
CONCLUSION
We
 hold the trial court erred in directing verdicts in favor of Earth Management
 on Newsmalls claims for negligence and negligent misrepresentation.  We also
 hold the trial court correctly granted a directed verdict on Newsmalls claim
 for violation of the UTPA.  Accordingly, the decision of the trial court is
AFFIRMED
 IN PART; REVERSED AND REMANDED IN PART.
HUFF
 and PIEPER, JJ., and GOOLSBY, AJ., concur.

[1] 42 U.S.C.A. §§ 9601 - 9675 (West 2005 & Supp.
 2008).  
[2] John H. Newsome, Jr. and Newsmall Clemson, LLC filed
 separate actions against Earth Management.  The actions were consolidated for
 trial and appeal.